**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

_____
                                  :
ROBERT PORGES,                    :
                                  :
            Petitioner,           :    Civil No. 07-1467 (RMB)
                                  :
        v.                        :
                                  :
CHARLES SAMUELS,                  :        **O P I N I O N**
                                  :
            Respondent.           :
_____    :


**APPEARANCES:**

    ROBERT PORGES, Petitioner pro se
    #10665-014
    Fort Dix Federal Correctional Institution
    Fort Dix, New Jersey  08640

**RENÉE MARIE BUMB, District Judge**

On March 29, 2007, Petitioner ROBERT PORGES (hereinafter "Petitioner") currently confined at Fort Dix Federal Correctional Institution, Fort Dix, New Jersey, filed his 28 U.S.C. § 2241 petition (hereinafter "Petition") and submitted his filing fee. See Docket Entry No. 1.  Petitioner, sentenced on August 9, 2000, to ninety seven months of imprisonment, see id. ¶ 9, challenges Respondent's decision not to reduce Petitioner's term of

imprisonment by one year in the event Petitioner participates in a drug abuse treatment program (hereinafter "RDAP") administered by the BOP in its Fort Dix facility. See id. ¶ 14. Petitioner asserts that such decision violates Petitioner's due process and equal protection rights. See id.

## DISCUSSION

**I.   Standard of Review**

Since Petitioner is proceeding pro se, his pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Since the case at bar examines an agency interpretation, the standards set forth in Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), govern a Court's review of BOP's construction. Specifically,

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. In the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency,

>must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 842-43 (footnotes omitted).

## II. The History of RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (hereinafter "VCCLEA") amended 18 U.S.C. § 3621 to require the Bureau of Prisons (hereinafter "BOP" or "Bureau") to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. See 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii).

To provide an incentive for prisoners to participate in such substance abuse programs, Congress conferred upon the BOP discretion to grant qualifying participants a sentence reduction of

up to one year.[1]  See 18 U.S.C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

Shortly after the passage of the Act, the BOP promulgated regulations in an effort to define the term "nonviolent offense." In doing so, the BOP referenced the term "crime of violence" as set forth in the criminal code, 18 U.S.C. § 924(c)(3), (hereinafter "Criminal Code Definition").[2]  See 28 C.F.R. § 550.58 (1995); see also Roussos v. Menifee, 122 F.3d 159, 160 (3d Cir. 1997).  The BOP accompanied § 550.58 by a Program Statement, P.S. 5162.02, which provided that a conviction under 21 U.S.C. § 841 or § 846 would be deemed a "crime of violence" if the sentencing court enhanced the defendant's sentence for possession of a weapon during the commission of the offense.  See Roussos, 122 F.3d at 161 (quoting

---

[1] While, according to the statute, the prisoners (a) convicted of a "nonviolent offense," and (b) successfully completing the program, are *entitled to consideration* for a sentence reduction, these prisoners are not guaranteed or otherwise "entitled" for such reduction.  See 18 U.S.C. § 3621(e)(2)(B).

[2] The Criminal Code Definition describes "crime of violence" as:

an offense that is a felony and-

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

P.S. 5162.02). However, in Roussos v. Menifee, 122 F.3d 159 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held that, based on the plain language of the statute, the BOP could not rely upon mere fact of a sentencing enhancement to deny a prisoner eligibility for the sentence reduction. See id. at 164. The Court found that P.S. 5162.02 was, therefore, inconsistent with the clear language of the enabling statute and, as such, entitled to no deference. See id. Specifically, the Third Circuit held:

> By ignoring the offense of conviction and looking only to sentencing factors, the BOP has attempted to transmogrify a "nonviolent offense" into a "crime of violence." In other words, the BOP converted a nonviolent crime into a violent one by means of a Program Statement that is inconsistent with the language of the statute, and its own regulations. More specifically, under the rationale of [the Ninth Circuit case of] Downey [v. Crabtree, 100 F.3d 662 (9th Cir. 1996)], we find the BOP's interpretation of a nonviolent offense in the Program Statement to be in conflict with both 18 U.S.C. § 3621(e)(2)(B) and 28 C.F.R. § 550.58 and therefore erroneous.

Id. at 163.

In short, the Roussos court found that "the BOP [could] not rely upon [an inmate's] sentencing enhancement to deny him eligibility for the sentence reduction." Id. at 164. Like the Third Circuit's decision in Roussos, many other Courts of Appeal have held that the BOP exceeded its authority in excluding from early-release eligibility those inmates convicted of a nonviolent offense who received a sentence enhancement for the use of or

possession of a firearm.  See Orr v. Hawk, 156 F.3d 651 (6th Cir. 1998), as amended by, 172 F.3d 411 (6th Cir. 1999); Fristoe v. Thompson, 144 F.3d 627 (10th Cir. 1998); Byrd v. Hasty, 142 F.3d 1395 (11th Cir. 1998); Martin v. Gerlinski, 133 F.3d 1076 (8th Cir. 1998); Bush v. Pitzer, 133 F.3d 455 (7th Cir. 1997); Downey v. Crabtree, 100 F.3d 662 (9th Cir. 1996); see also LaSorsa v. Spears, 2 F. Supp. 2d 550 (S.D.N.Y. 1998).

In response, the BOP made a revision to the regulation and issued a new program statement to accompany this revised regulation.  While the BOP eliminated all references to the Criminal Code Definition of "crime of violence" in the amended version of the governing regulation and did not use Criminal Code Definition in the language of these new program statements, the agency set forth "additional eligibility" criteria in order to achieve certain exclusions through the working of the revised regulation and new program statements.

Specifically, the BOP amended the regulation to provide that inmates convicted of a nonviolent offense may be eligible for early release, in accordance with the "additional early release criteria" set forth by the BOP, "as an exercise of [its] discretion."  28 C.F.R. § 550.58.  The relevant portion of the amended regulation reads as follows:

> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and

>   successfully completes a residential drug abuse [**11] treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
>> (a) Additional early release criteria.
>>
>>> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release: . . . .
>>>
>>>> (vi) Inmates whose current offense is a felony:
>>>>
>>>>> (A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another . . . .

28 C.F.R § 550.58 (1999)(emphasis added).

Similarly, one of the program statements now accompanying § 550.58, P.S. 5162.04, provides that "an inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the [BOP]." P.S. 5162.04, § 2.[3] After enumerating in its § 6 various offenses considered by the Director to be "crimes of violence," P.S. 5162.04 then proceeds to § 7 to interpret 28 C.F.R. § 550.58(a)(vi) and to list additional disqualifications based upon the Director's discretion; such disqualifications

---

[3] Another program statement accompanying the revised regulation, P.S. 5330.10, effectively traces the language of § 550.58.

include, <u>inter alia</u>, conspiracy to commit acts of racketeering that involved violent conduct.  <u>See</u> <u>id.</u> §§ 6, 7.

### III. **Background of the Case at Bar**

Petitioner's current offenses include convictions of Racketeering Conspiracy (hereinafter "RICO Conspiracy"), in violation of 18 U.S.C. § 1962(d), Racketeering (hereinafter "RICO"), in violation of 18 U.S.C. § 1962(c), and Conspiracy to Obstruct the Internal Revenue Service, in violation of 18 U.S.C. § 371.  <u>See</u> <u>United States v. Porges</u>, 80 Fed. App. 130, 131 (2d Cir. 2003).  With respect to his RICO and RICO Conspiracy charges, the Indictment alleged, <u>inter alia</u>, that Petitioner "was an organizer or leader of a criminal activity that involved five or more persons and was otherwise extensive." Pet. at 64.  The Indictment alleged that Petitioner, an attorney specializing immigration law and the principal in his Porges Law Firm (hereinafter "Law Firm"), operated or participated in a RICO enterprise, the "business goal" of which was to profit through various activities spurring from systemic smuggling of illegal aliens from China into the United States.  <u>See</u> Ans., Ex. 5.  The physical process of smuggling was accompanied by other enterprise activities, such as preparation of the aliens' false applications for political asylum, kidnaping of those aliens who failed to pay for the smuggling "services" and restraining them until the payments were made, preparation of aliens' documents

seeking release from federal custody in the event the aliens were apprehended by the U.S. immigration services and return of such released-from-custody aliens to the smugglers. See id.

On February 11, 2002, Petitioner pled guilty to Counts 1 (RICO), 2 (RICO Conspiracy), and 69 (Tax Evasion). The Probation Department calculated Petitioner's Sentencing Guidelines adjusted offense level as 27. In its calculation, the Probation Department determined that the underlying racketeering activity with respect to Counts 1 and 2 was trafficking in documents. The United States apparently did not object to this calculation. On August 9, 2002, Petitioner was sentenced to 97 months' imprisonment.

Following his sentence, Petitioner sought to ensure that, had he enrolled in Fort Dix's RDAP, he would be eligible for "early release" incentive, i.e., for a qualifying reduction of his prison term by a period of one year. See Pet. at 56. Fort Dix officials, however, notified Petitioner that he was ineligible for such term reduction because of the nature of Petitioner's offense. See id.

Petitioner, thereafter, filed a formal inquiry with the warden of Fort Dix. In filing of this inquiry Petitioner touched on what appears to be the crux of this matter, i.e., he stated his opinion that, since

> [t]he indictment [with respect to RICO and RICO Conspiracy Charges] involv[ed] multiple acts and multiple parties, and the specific predicate act[s were] set forth against each defendant [indicted and convicted as a member of the RICO enterprise, and] the predicate acts related to [Petitioner were limited to the] charges of

> filing false political asylum applications and conspiracy
> to file such applications, [Petitioner's] offense [was]
> not [of the type] which precludes early release.

Pet. at 53.

In response, the warden notified Petitioner that a review of Petitioner's

> Pre-Sentencing Investigation Report[] reveal[ed that
> Petitioner was] involved in a [RICO] Conspiracy[,] which
> [was] led [by Petitioner and] in which [Petitioner]
> smuggled and kidnaped Chinese aliens.  Therefore, this
> offense [fell] under the Director's discretion and
> preclude[d, upon exercise of such discretion,
> Petitioner's] reduction in sentence.

Id. at 54 (relying on P.S. 5152.04).

Petitioner appealed that determination to the Regional Office of the BOP, which affirmed the warden's finding.  See id. at 52 (stating that Petitioner's "Pre-Sentencing Investigation Report[] reveal[ed that Petitioner was] involved in a [RICO] Conspiracy [which, in turn, involved the acts of] smuggl[ing] and kidnap[ing of] Chinese aliens").  Petitioner appealed this determination to the BOP's Central Office, asserting that Petitioner was not personally involved in the activity of his RICO enterprise that actually involved either smuggling and/or kidnaping, or in conspiring to commit these acts.  See id. at 47.  The Central Office denied Petitioner's appeal stating that, pursuant to 3621(e), the BOP: (a) reviewed Petitioner' Pre-Sentencing Investigation Report in order to determine what constitutes Petitioner's "underlying offense," i.e., the offenses that

Petitioner conspired to commit; (b) concluded that the "underlying offenses" included racketeering, alien smuggling, and kidnaping; and (c) properly disqualified Petitioner from early release, pursuant to P.S. 5162.04, on the basis of the nature of Petitioner's offense. See Ans. Exs. 4, 5.

Having exhausted his administrative remedies, Petitioner filed the instant Petition. The three-page memorandum accompanying the Petition alleges that the BOP's finding as to what constitutes Petitioner's particular "underlying offenses" were erroneous because: (a) Petitioner's plea agreement indicated that Petitioner was not personally involved in the acts of smuggling and/or kidnaping, or the acts of conspiring these activities; and (b) Petitioner's activities were limited to falsification of immigration documents and other illegal usages of Petitioner's legal knowledge and status as a lawyer. See Pet. at 7. Petitioner alleges that his due process and equal protection rights were violated by the BOP's determination. Id. at 8-9.

Responding to Petitioner's allegations, Respondents: (a) maintain that Petitioner's due process rights were not violated because "all [P]etitioner has lost [was] an opportunity to be considered for early release," Ans. at 24, and (b) ignore Petitioner's equal protection allegations and proceed to assert that Petitioner's § 3621(e) challenge "is not yet ripe for adjudication because Petitioner has not yet successfully completed"

his RDAP.  Ans. at 25.

### IV. **Petitioner's Allegations, Stated and, Apparently, Intended**

Petitioner's "legal allegations" that Respondent violated Petitioner's due process and/or equal protection rights are irrelevant not only to the facts at bar, but to the entire argument set forth in Petitioner's memorandum, as well as to the claims that he presented to the BOP.

Procedurally, Petitioner had the due process he was entitled to obtain from the agency; the fact that he merely disagrees with the decision reached by the BOP does not indicate that he was not provided with all the constitutional process due.

And, because Petitioner neither alleges that he was discriminated on the basis of the grounds triggering strict scrutiny (e.g., on the basis of being a racial minority), nor asserts that the BOP's decision (to "discriminate" violent offenders by denying them early release eligibility) fails to rationally relate to a legitimate government goal, Petitioner's equal protection claim does not state a constitutional argument but merely expresses his disappointment with the situation at hand.  In other words, even if the Court is to hypothesize that Petitioner's rights were violated by the BOP's decision to disqualify him from the early release incentive, the facts alleged by Petitioner unambiguously indicate that such violation could not have been of

the Fourteenth Amendment nature. The constitutional case law to that effect is long settled and requires to recitation in this already lengthy opinion dealing with a qualitatively different issue. See, e.g., Sandin v. Conner, 515 U.S. 472 (1995); Chapman v. United States, 500 U.S. 453(1991).

If the Court were to concentrate on the facts of Petitioner's allegations and the claims that he presented to the BOP, it appears that the actual Petitioner's claim is that the BOP's interpretation of the term "underlying offense" constituted an application of the pertinent agency's regulation (i.e., 28 C.F.R § 550.58, as read through the prism of P.S. 5162. 04) that violated the enabling mandate of § 3621(b).[4] Accord Pet. at 8 (paraphrasing this issue as "[w]hat is . . . Petitioner's offense?"). Although not a question of constitutional law, this claim falls squarely within the realm of § 2241, since Section 2241 of Title 28 of the United States Code provides, in relevant part, that "[t]he writ of habeas corpus [examines the claims asserting that a] prisoner . . . is in custody in violation of the Constitution *or* laws . . . of the United States," 28 U.S.C. § 2241(c)(3), and the terms "laws" encompasses federal statutes, including 18 U.S.C. § 3621.

---

4

Not only the Petition, in toto, suggests that Petitioner's goal was to challenge P.S. 5162.04 *as applied* to Petitioner rather than *as drafted*, but the issue of P.S. 5162.04 validity *as drafted* has been well settled in this District for quite a while and requires no revisiting by this Court. See, e.g., Magnin v. Beeler, 110 F. Supp. 2d 338 (D.N.J. 2000).

**V.      Interpretation of the Term "Underlying Offense" As a Permissible Construction of Section 3621 Mandate**

Since Congress has not spoken to this precise question and left it to the discretion of the BOP, this Court, while examining Petitioner's challenge, is obligated to uphold any BOP's permissible construction of § 3621, pursuant to the holding of Chevron.  See 467 U.S. at 842-43.

Here, Petitioner' chain of reasoning appears to be as follows: (a) Petitioner's criminal activity must be deemed limited only to those "predicate acts" of the RICO enterprise, which Petitioner performed personally; (b) the process of filing false applications, or conspiracy to file such applications, is not a violent activity even if it is a criminal one; (c) since the criminal activities Petitioner personally performed were non-violent, Petitioner's "underlying offense" for the purposes of § 3621 must be deemed non-violent acts of racketeering or conspiracy to commit racketeering; and (d) while Petitioner is not challenging the propriety of BOP's disqualification (from the early release incentive) of those inmates who were convicted of violence-based racketeering or conspiracy to commit violence-based racketeering, Petitioner is alleging that BOP improperly factored the violent actions of alien smuggling and kidnaping (or conspiracy to do so) into its determination of what constituted Petitioner's "underlying offense."  See Pet. at 53.

The BOP's position, however, appears to be that: (a) Petitioner's "underlying offense" consisted of the entire panoply of racketeering activities (or conspiracy to commit the racketeering activities) undertaken by the RICO enterprise; (b) since these activities involved alien smuggling and kidnaping (or conspiracy to do so), and such acts are recognized as acts of violence by the applicable regulation, Petitioner's "underlying offense" for the purposes of § 3621 must be deemed violent acts of racketeering or conspiracy to commit such violent acts of racketeering; and (c) being charged with "underlying offense" that involved acts of violence, Petitioner was properly disqualified from the early release incentive. See id. at 54. Riccobene, 709 F.2d at 222-24 (citations and quotation marks omitted).

The record before this Court, however, is lacking. If Petitioner actually plead guilty to the RICO / RICO Conspiracy charges based on the enterprise, which affairs involved, inter alia, the acts of smuggling and kidnaping aliens, or conspiracy to commit such acts, the BOP's interpretation of his "underlying offense" as a "violent" offense--for the purpose of assessing Petitioner's suitability to the early release incentive--is a reasonable construction of the statutory mandate (and the ensuing regulatory regime existing pursuant to 28 C.F.R § 550.58, as read through the prism of P.S. 5162.04). This Court would be

constrained, by the standard established in Chevron, to affirm such BOP's decision.[5] Accord, United States v. Byrd, 969 F.2d 106, 109-11 (5th Cir. 1992) (for the purposes of determining a prisoner's early release eligibility, "it is not necessary that the charged offense be a crime of violence," as long as it is clear that violent conduct was a part of actions involved in the commission of the "underlying offense").

Alternatively, if Petitioner actually plead guilty to the RICO / RICO Conspiracy charges based on the enterprise, which affairs *did not* involve, inter alia, the acts of smuggling and kidnaping aliens, or conspiracy to commit such acts, the BOP's interpretation of Petitioner's "underlying offense" as a "violent" one--for the purposes of assessing Petitioner's suitability to one-year reduction upon his successful completion of RDAP--appears wholly unreasonable.

Accordingly, because the record before this Court does not address the salient issues posed by the Petitioner, the Court will issue an order directing supplemental briefing to be supported by documentary evidence.

---

[5] Indeed, finding otherwise would create an anomalous "exception" for all inmates convicted of racketeering, felony-murders, complicity, inchoate offenses, etc., that undisputably involved acts of violence by allowing these inmates to take advantage of the incentive associated with the BOP's RDAP through mere claim that these inmates, *personally*, did not commit the violent acts at issue.

An appropriate Order accompanies this Opinion.

                                             s/Renée Marie Bumb
                                             **RENÉE MARIE BUMB**
                                             **United States District Judge**

Dated: February 4, 2008